UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

_____

KATHERINE ELIZABETH BANKS,

                                        Plaintiff              DECISION AND ORDER

-vs-
                                                               1:19-CV-0254 CJS

COMMISSIONER OF SOCIAL
SECURITY,

                                        Defendant.

_____

## INTRODUCTION

This is an action brought pursuant to 42 U.S.C. § 405(g) to review the final

determination of the Commissioner of Social Security ("Commissioner" or "Defendant")

which denied the application of Katherine Banks for Supplemental Security Income

("SSI") benefits.   Now before the Court is Plaintiff's motion (ECF No. 8) for judgment on

the pleadings and Defendant's cross-motion (ECF No. 12) for the same relief.   For the

reasons discussed below, Plaintiff's application is granted, Defendant's application is

denied, and this matter is remanded for further administrative proceedings.

## STANDARDS OF LAW

The Commissioner decides applications for disability benefits using a five-step

sequential evaluation:

> A five-step sequential analysis is used to evaluate disability claims. *See*
> 20 C.F.R. §§ 404.1520, 416.920.   First, the Commissioner considers
> whether the claimant is currently engaged in substantial gainful activity. If
> he is not, the Commissioner next considers whether the claimant has a
> severe impairment which significantly limits his physical or mental ability to

do basic work activities. If the claimant suffers such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment which is listed in the regulations [or medically equals a listed impairment].   Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, he has the residual functional capacity [("RFC")] to perform his past work.[1]  Finally, if the claimant is unable to perform his past work, the Commissioner then determines whether there is other work which the claimant could perform.   The claimant bears the burden of proof as to the first four steps, while the Commissioner bears the burden at step five.

*Colvin v. Berryhill*, 734 F. App'x 756, 758 (2d Cir. 2018) (citations and internal quotation marks omitted)

An unsuccessful claimant may bring an action in federal district court to challenge the Commissioner's denial of the disability claim.   In such an action, "[t]he court shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing." 42 U.S.C.A. § 405(g) (West).   In relevant part, Section 405(g) states that "[t]he findings of the Commissioner of Social security as to any fact, if supported by substantial evidence, shall be conclusive."

The issue to be determined by the court is whether the Commissioner's conclusions "are supported by substantial evidence in the record as a whole or are based on an erroneous legal standard." *Schaal v. Apfel*, 134 F.3d 496, 501 (2d Cir.

---

[1] Residual functional capacity "is what the claimant can still do despite the limitations imposed by his impairment." *Bushey v. Berryhill*, 739 F. App'x 668, 670–71 (2d Cir. 2018) (citations omitted); *see also*, 1996 WL 374184, Titles II & Xvi: Assessing Residual Functional Capacity in Initial Claims, SSR 96-8P (S.S.A. July 2, 1996).

1998); *see also, Barnaby v. Berryhill*, 773 F. App'x 642, 643 (2d Cir. 2019) ("[We] will uphold the decision if it is supported by substantial evidence and the correct legal standards were applied.") (citing *Zabala v. Astrue*, 595 F.3d 402, 408 (2d Cir. 2010) and *Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir. 2012).").

"First, the [c]ourt reviews the Commissioner's decision to determine whether the Commissioner applied the correct legal standard." *Tejada v. Apfel*, 167 F.3d 770, 773 (2d Cir. 1999); *see also, Pollard v. Halter*, 377 F.3d 183, 189 (2d Cir. 2004) ("[W]here an error of law has been made that might have affected the disposition of the case, this court cannot fulfill its statutory and constitutional duty to review the decision of the administrative agency by simply deferring to the factual findings of the [administrative law judge ("]ALJ["]). Failure to apply the correct legal standards is grounds for reversal.") (citation omitted).

If the Commissioner applied the correct legal standards, the court next "examines the record to determine if the Commissioner's conclusions are supported by substantial evidence." *Tejada v. Apfel*, 167 F.3d at 773.   Substantial evidence is defined as "more than a mere scintilla.   It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (citation omitted).

> The substantial evidence standard is a very deferential standard of review—even more so than the 'clearly erroneous' standard, and the Commissioner's findings of fact must be upheld unless a reasonable factfinder would have to conclude otherwise." *Brault v. Social Sec. Admin., Comm'r*, 683 F.3d 443, 448 (2d Cir. 2012) (per curiam) (emphasis in original). "An ALJ is not required to discuss every piece of evidence submitted, and the failure to cite specific evidence does not indicate that such evidence was not considered. *Id.*

*Banyai v. Berryhill*, 767 F. App'x 176, 177 (2d Cir. 2019), as amended (Apr. 30, 2019) (internal quotation marks omitted).

In applying this standard, a court is not permitted to re-weigh the evidence. *See, Krull v. Colvin*, 669 F. App'x 31, 32 (2d Cir. 2016) ("Krull's disagreement is with the ALJ's weighing of the evidence, but the deferential standard of review prevents us from reweighing it."); *see also, Riordan v. Barnhart*, No. 06 CIV 4773 AKH, 2007 WL 1406649, at *4 (S.D.N.Y. May 8, 2007) ("The court does not engage in a *de novo* determination of whether or not the claimant is disabled, but instead determines whether correct legal standards were applied and whether substantial evidence supports the decision of the Commissioner.") (citations omitted).

## FACTUAL and PROCEDURAL BACKGROUND

The reader is presumed to be familiar with the facts and procedural history of this action.   The Court will refer to the record only as necessary for purposes of this Decision and Order.

Plaintiff applied for SSI benefits claiming that she was disabled due to chronic migraine headaches, depression and anxiety.   Plaintiff maintains that for most of her life she has had headaches that are not controlled by medication.   Plaintiff states that she almost always has a headache to some degree, and that she also has several severe migraine-type headaches per month, each of which may last for several days. Plaintiff states that she takes Excedrin and Imitrex for her headaches, though she is only provided with nine Imitrex pills per month. Over the years Plaintiff has been

prescribed various medications, but she feels that Imitrex is the only one that provides relief without disqualifying side effects.   In addition to her headaches, Plaintiff claims to have brief seizure-like incidents, during which she will stare into space and possibly fall.

Plaintiff, who lives with her mother, reports that she essentially does nothing all day except sleep, eat, draw pictures and use the computer.   Plaintiff states that she does not do any type of household chores, other than feeding her cats, since physical activity triggers her headaches.   Plaintiff states that she occasionally goes shopping with her mother at night when crowds are smaller, but that, otherwise, she rarely goes out because lights, noise and crowds cause her to be anxious and to have headaches. Plaintiff has stated, for example: "I can no longer tolerate normal lighting or most daily activity."[2]   When Plaintiff goes out, such as to doctors' appointments, she wears dark glasses because light bothers her.   During the administrative hearing, Plaintiff stated that the fluorescent lighting bothered her.

Plaintiff graduated from high school with the aid of a Section 504 plan that accommodated her frequent headache-related absences.[3]   While in high school, Plaintiff completed a BOCES course in graphic arts, and office notes from Plaintiff's therapist suggest that Plaintiff may be pursuing some type of online commercial activity involving artwork and photography.   However, Plaintiff has never held a job, and has only ever applied for two jobs, many years ago.   Plaintiff has indicated that she sees no point in attempting to find a job, since she knows that she will be unable to work due to

---

[2] Administrative Transcript at p. 164.
[3] See, Administrative Transcript at p. 513 (Plaintiff missed 60 days of instruction).

her impairments. Plaintiff has expressed an interest in helping others and in pursuing a career in a medical field but feels that her impairments prevent her from doing so.

Plaintiff states that she feels depressed because of her headaches and anxiety. Plaintiff indicates that she interacts with certain persons online, but that she has very little direct interaction with other people, including her mother. In this regard, the record indicates that Plaintiff has a difficult relationship with her mother, who herself is being treated for depression, and that she is bothered by her mother's cigarette smoke.

In 2012, Plaintiff's primary care physician, John Sauret, M.D.("Sauret"),[4] observed that Plaintiff's migraines were getting worse, and that Plaintiff had recently gone to an emergency room where she had been given Imitrex, which helped.   Sauret referred Plaintiff to neurologist Kenneth Halliwell, M.D. ("Halliwell").   Halliwell subsequently treated Plaintiff throughout the relevant period, trying without much apparent success to find a prophylactic treatment regimen to reduce or eliminate Plaintiff's headaches.   On August 19, 2013, Halliwell reported that Plaintiff's headaches remained unchanged, with "chronic daily [headache] with severe migraine type symptoms about every other day."[5]   Halliwell's diagnosis was "severe refractory [headache] disorder, mixture of migraine [headaches], rebound [headaches], chronic daily [headaches].   Unilateral headache with phonosenstivity, photosensitivity, nausea, emesis.   Imitrex is effective abortive therapy but she tends to overuse Imitrex and Excedrin."   Halliwell noted that Plaintiff had already tried seven or eight other

---

[4]  Administrative Record at p. 472 (Identifying Sauret as Plaintiff's primary care physician at Catholic Health Mount St. Mary's Hospital).
[5]  Administrative Transcript at p. 282.

prescription medications for headaches, but that those medications had been discontinued due to side effects.

Plaintiff sought a second opinion at the Dent Neurological Institute ("Dent"), but after an initial visit she did not follow up further, purportedly due to lack of transportation.[6]  Although, Plaintiff also indicated to her therapist that she though it would be a waste of time to return to Dent, or to try other treatments, since she thought that Imitrex was the only thing that helped her.

On June 4, 2014, Halliwell indicated that he did not fill out disability paperwork for his patients, preferring that they obtain an evaluation from an occupational medicine specialist.   Nevertheless, Halliwell indicated that he did not think Plaintiff was capable of working, and he provided her with a letter to that effect. Administrative Transcript at p. 286 ("I did provide the patient with a letter stating that in my opinion the patient is unable to work at this time.").   On December 1, 2014, Halliwell reported that Plaintiff's headaches were essentially unchanged, and that in addition Plaintiff was having problems, with seizure-like activity, which had been occurring for years but was getting worse, and with anxiety.[7]   Halliwell recommended that Plaintiff be admitted for long-term seizure monitoring, and prescribed Paxil and therapy for Plaintiff's anxiety. Plaintiff declined the recommendation for long-term seizure monitoring, though she did subsequently have other diagnostic procedures for her seizure-like/syncope spells, including EEG and tilt-table testing, all of which were negative.   However, such testing

---

[6] Administrative Transcript at p. 286.
[7] Administrative Transcript at p. 298.

revealed that Plaintiff has "venous abnormalities" in her brain.[8]

Plaintiff also attended mental health therapy for slightly more than a year with mental health therapist Kerry Collins, LMHC ("Collins").   Over that period, Plaintiff had seventeen sessions with Collins, each lasting 45-to-50 minutes.   Collins' impression was "anxiety disorder," and she reported that Plaintiff had severe depressed mood, moderate difficulty concentrating, moderate difficulty controlling her worrying, moderate difficulty staying asleep, severe anxiety and worry, and moderate feelings of being on edge.   Collins noted that Plaintiff was always pleasant, cooperative and engaged during their sessions, but she expressed frustration that Plaintiff was not able to make more progress due to her negative and fatalistic thinking.   On March 10, 2016, Collins wrote a discharge note, summarizing Plaintiff's course of treatment and indicating that Plaintiff was being discharged because she had stopped attending sessions, purportedly due to transportation problems.[9]

However, in 2017, at her primary care physician's suggestion, Plaintiff resumed mental health treatment with psychologist Dianna Bruno, Psy,D. ("Bruno").[10]  However, the record contains no records from Bruno.

On September 3, 2015, Plaintiff had a consultative psychological examination by Janine Ippolito, Psy.D. at the Commissioner's request.   Ippolito's examination results were basically normal, though she indicated that Plaintiff had somewhat impaired

---

[8]  Administrative Transcript at p. 454 ("It is also known that the patient has some venous abnormalities which appear to be congenital, according to Dr. Miller, and these are located in her frontal lobe in the basal ganglia.").
[9]  Administrative Transcript at pp. 447-450.
[10]  See, Administrative Transcript at pp. 475, 456.

attention and concentration with regard to math skills, and average to below average intelligence.   Ippolito indicated that Plaintiff was able to understand simple directions, perform simple and complex tasks independently, maintain attention and concentration, maintain a regular schedule, learn new tasks, and make appropriate decisions, all without limitation.   The only limitation noted by Ippolito was, "she can relate adequately with others and appropriately deal with stress with moderate limitations."   Ippolito stated that the results of the examination were consistent with psychiatric problems, but that such problems did not appear significant enough to interfere with Plaintiff's daily functioning.

Also, on September 3, 2015, Plaintiff had a consultative internal medicine examination by Hongbiao Liu, M.D. ("Liu"). Liu performed a physical examination, which found no abnormal results.   Liu opined that Plaintiff had "no limitation for routine activities," but that she should "avoid heights and heavy machinery operation because of history of possible seizures or syncope."

On February 28, 2018, the ALJ issued a decision finding that Plaintiff was not disabled at any time between the date she applied for benefits, June 26, 2015, and the date of the decision.[11]   Applying the familiar five-step sequential evaluation set forth earlier, the ALJ found that: Plaintiff had not engaged in substantial gainful activity since the alleged onset date; Plaintiff had severe impairments consisting of "migraine headaches, staring spells with possible seizure, depression, anxiety"; Plaintiff's

---

[11]  The ALJ, the Hon. Paul Georger, issued his decision following a hearing at which Plaintiff appeared with her attorney, and at which both Plaintiff and a vocational expert ("VE") testified.

impairments, either singly or in combination, did not meet or medically equal a listed impairment; Plaintiff had the RFC to perform less than the full range of light work, provided that the work was simple and did not require more than occasional interaction with supervisors, co-workers and the public; Plaintiff had no past relevant work; but considering Plaintiff's age (24), education (high school), work experience and RFC, there were other jobs that she could perform.

In making this RFC finding, the ALJ reviewed the medical record and noted that with regard to Plaintiff's headaches and seizure-like spells, she did not always take her doctor's advice concerning nutrition and lifestyle changes (regarding sleep, soda consumption and caffeine intake), and sometimes stopped taking prescribed medications without notifying her doctors.   The ALJ also noted that Plaintiff had skipped treatment altogether at various intervals, such as between February 2013-August 2013, and between August 2013-June 2014.   Further, the ALJ noted that Plaintiff had declined the recommendation to have in-patient long-term seizure monitoring.   The ALJ also indicated that according to consultative medical examiner Liu, Plaintiff had no physical limitations.

Regarding the mental health treatment record, the ALJ observed that Plaintiff had "engaged intermittently in mental health treatment," primarily for anxiety, but had made only "minimal progress in counseling" due to her unwillingness to follow her therapist's recommendations.   The ALJ noted, for example, that Collins had "encouraged [Plaintiff] to go to college or find a job because her isolation [at home] was resulting in more paranoia and anxiety."   The ALJ also discussed the results of Ippolito's consultative

10

psychological examination, mentioned earlier.

The ALJ assigned "great weight" to Liu's opinion, finding that it was consistent with the treatment record. The ALJ gave only "partial weight" to Ippolito's opinion, stating: "The diagnoses and impairments are consistent with those in the medical record, but her opinion as to the claimant's ability to function is not consistent with the record."   The ALJ stated that he gave "little weight" to Halliwell's statement that Plaintiff could not work, purportedly since it was "based primarily on the claimant's own assertion that she cannot work," and since Halliwell "did not opine on the claimant's actual abilities even considering her headaches."

Plaintiff now contends that the ALJ's determination must be reversed because it contains legal error and is not supported by substantial evidence.   For example, Plaintiff alleges that the ALJ improperly relied on his own lay opinion when making the RFC finding, and that the RFC finding is inconsistent with the consultative opinions.

The Commissioner disputes Plaintiff's contentions and maintains that the ALJ's decision is free of legal error and supported by substantial evidence.

DISCUSSION

The Court agrees with Plaintiff that remand is required.   As a preliminary matter, the Court finds that it was error for the ALJ to fail to address the absence of treating records from psychologist Bruno.   At the hearing, Plaintiff testified about receiving regular mental health therapy with Dr. Bruno through "Saint Mary's Neighborhood Health Center."[12]   However, the ALJ's decision does not mention Bruno, and the

---

[12] Administrative Transcript at pp. 39-40.

medical records received from Saint Mary's contain no treatment notes from Bruno, though they do contains notes from other providers referencing the fact that Plaintiff was treating with Bruno.   The ALJ should have addressed this issue.

Additionally, it is unclear to the Court how the ALJ weighed Ippolito's opinion when making the RFC finding.   In that regard, although Ippolito's was the only psychological opinion to which the ALJ gave any weight, the ALJ offered only a single sentence about it, stating: "The diagnoses and impairments are consistent with those in the medical record, but her opinion as to the claimant's ability to function is not consistent with the record."   It is unclear to what particular "opinion" the ALJ was referring.   It is also unclear what the ALJ meant when he stated that Ippolito's opinion was "inconsistent with the record."   In that regard, the Court is unsure whether the ALJ meant that Ippolito's opinion was more restrictive or less restrictive than it should have been.

The Court also finds that the ALJ's treatment of the opinions of Halliwell and Liu was erroneous. In granting only little weight to Halliwell's opinion that Plaintiff was unable to work due to her headaches, the ALJ selectively focused on a number of factors that do not, in the Court's view, detract from Halliwell's opinion.   Halliwell, a neurologist, treated Plaintiff over a period of years and was well aware of the factors upon which the ALJ seized, such as Plaintiff's occasional failure to follow treatment recommendations.   Despite that, Halliwell indicated, and there is no evidence to the contrary, that Plaintiff was suffering from daily chronic headaches.   Moreover, contrary to what the ALJ suggested, the Court's review of the record indicates that Plaintiff

complied with her doctors' treatment and diagnostic recommendations much of the time. To the extent that the ALJ arrived at a conclusion that was different than Halliwell's based on the current record, he did not do so based on medical opinion, but rather, he relied on his own lay evaluation of the record or on evidence that was less than substantial.   In that regard, the Court rejects the notion that Halliwell's opinion was in any way refuted by Liu's opinion, or that Liu's opinion amounts to substantial evidence to support the RFC finding.   Liu, an internist, conducted a brief physical examination that in no way evaluated, let alone disproved, the existence, or alleged limiting effects, of Plaintiff's well-documented headache condition.   At most, Liu's examination showed that Plaintiff does not have physical limitations beyond those caused by her neurological problems (headaches and seizure-like spells), but Plaintiff is not claiming to have such limitations.

In addition, both Liu and the Commissioner's non-examining review physician opined that Plaintiff should not work around heights or machinery, due to her seizure-like symptoms.[13]   Despite that, and despite the fact that the ALJ purportedly gave great weight to Liu's opinion, the ALJ found, without explanation, that Plaintiff could occasionally climb ropes, ladders and scaffolds, and occasionally work at unprotected heights and operate motor vehicles.[14]   There does not appear to be substantial evidence supporting that aspect of the RFC finding.

For all of these reasons the Court finds that the Commissioner's decision must

---

[13]  Administrative Transcript at pp. 62, 356.
[14]  Plaintiff's own doctors have prohibited her from operating motor vehicles.

be reversed and remanded for further administrative proceedings.

CONCLUSION

For the reasons discussed above, Plaintiff's motion for judgment on the pleadings (ECF No. 8) is granted, Defendant's cross-motion (ECF No. 12) for the same relief is denied, and this matter is remanded to the Commissioner for further proceedings consistent with this decision under 42 U.S.C. 405(g), sentence four.   The Clerk of the Court is directed to enter judgment for Plaintiff and close this action.

So Ordered.

Dated: Rochester, New York
       September 22, 2020

ENTER:


/s/ Charles J. Siragusa
CHARLES J. SIRAGUSA
United States District Judge

14